

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

Plaintiff

James Lucas  3341231

versus                                          CIVIL ACTION NO. 2:17-cv-04146

Defendants

Jason Collins, Acting Warden
Mount Olive Correctional Comple
One Mountainside Way
Mount Olive, WV  25185

Loita Butcher, Commissioner DOC
1409 Greenbrier Street
Charleston, WV  25311

Jeff Sandy, Secretary DMAPS
1900 Kanawha Blvd.
Bldg. 1, Suite W-400
Charleston, WV  24305

« « « « « « « » » » » » »

# COMPLAINT

## 1. Previous Lawsuits

A. Have you begun other lawsits in state or federal court dealing with the same facts involved in this action or other wise related to this action?

Yes __X__          No_____

1

B. If yes, describe each lawsuit in the spaces below.

1. Parties to the first related lawsuit:

plaintiff:   James Lucas 3341231

Defendants:   David Ballard, (or) Warden MOCC

Jim Rubenstein, (or) DOC Commissioner

Jeff Sandy, Secretary  DMAPS

2. Court:   U.S. Southern District Court
Charleston, WV

3. Docket Number   2:17-cv-03144

4. Disposition:   Pending

5. Date of filing lawsuit:   5 / 30 / 2017

Place of Present Confinement:  Mount Olive Correctional Complex
One Mountainside Way
Mount Olive, WV  25185

(2)

1. **Parties to second related lawsuit:**

   Plaintiff:

   James A. Lucas

   Defendants:

   David Ballard, (or) Warden MOCC

   Loita Butcher, DOC Commissioner

   Jeff Sandy, Secretary, D-MAPS

2. **Court:**

   U.S. District Court

   Southern District of West Virginia

   Judge Dwane Tinsley, U.S. Magistrate Judge

3. **Docket number:**

   2:17-cv-03894

4. **Disposition:**

   Pending

5. **Approximate date of filing lawsuit:**

   8/24/17

A. Is there a prisoner grievance procedure in this institution?

Yes __X__   No_____

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?

Yes __X__   No_____

C. If the answer is YES:

1. What steps did you take?

_Grievance # 2017-mocc-oak-76 filed on on 22 July, 2017 - (enclosure A)_

_Appealed to Warden - 6 June, 2017_

_Appealed to Commissioner - 11 July, 2017_

2. What was the result?   _A. To date (10/01/17) Grievance # 76 has not been returned to Petitiioner._

_B. Letter written to Commissioner on 7 Sept., 2017 (enclosed)_

_C. 9/22/17 - Commissioner's 13 Sept., 2017 received. (copy enclosed)_

_D. 9/25/17 - Petitioner filed 42 U.S.C. § 1983 with Kanawha Cty. Circuit Court_

_E. State returned petition citing change in filing fees, additional fees, and other forms to fill out._

_F. Petitioner decided to file in Federal Court. It costs more but had enough of W.Va's court system._

III.   Parties.

(In item A. below, place your name and inmate registration number in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A. Name of Plaintiff: ___James Lucas, 3341231___

_Mount Olive Correctional Complex_

_One Mountainside Way_

_Mount Olive, WV 25185_

B. Additional Plaintiffs: _____N.A._____

(4)

# STATEMENT OF CLAIM

**INFRACTION = Mount Olive Correctional Complex's (MOCC's) failure to post prison rules and regulations.**

The first requirement imposed on a government agency responsible for prisoners, by the federal constitution's Fourteenth Amendment and the state due process clause in W. Va. Const. art III, § 10 is *publication of rules and regulations to apprise them of the conduct required for them to earn good time credits.*

Publishing rules is part of the notice phase of due process. Successful completion of rehabilitation "classes" is a valuable liberty interest protected by the due process clause. The Gillespie ruling (164 W.Va. 599) would certainly include rules or particulars concerning any 'rehabilitation' type classes needed to meet requirements for parole.

Normally this is not an issue worth grieving, **but another more serious problem has arisen from MOCC's failure to comply with the requirement to post rules and regulations.** MOCC's failure (for seven years) to post any DOC or MOCC Policy inre "IRPP rules"[1] has allowed this problem to metastasize and deteriorate to the level where fractious staff members are now using the obfuscated "rules" to perpetrate petty acts of revenge against inmates with whom they have a resentment.

## The incident that led to this action --

Around the middle of March, 2017, a member (the lead singer) of the bluegrass band Petitioner has played in for 17 years, asked his teacher (Ms. Stephanie Boyd) if he was IRPP compliant. Her curt reply was, *"No, and you're not going to be."* He answered with, *"Then why am I wasting my time in this class?"* and he left the class room. Walking out was a little rude perhaps, but it was in response to an equally rude answer. The thing is, no inmate should be so confused about what is required of him in the way of 'classes' that he has to ask if he is compliant or not. The question was made necessary only because *no rules have ever been posted inre IRPP compliance or any rules apprising inmates of their responsibilities in the "IRPP program."* And certainly the teacher's reply didn't leave the innmate with any information that was helpful. A memo every now and then taking away another 'privilege' does <u>not</u> constitute a posting of the rules for, or the authority for instituting a program that permits MOCC to punish inmates for not taking recommended classes!

---

[1] Petitioner has no idea what IRPP stands for (and neither did anyone else he asked) but it has something to do with being current with taking the "rehabilitative classes" that are 'recommended' for the inmate to take.

(5)

<mark>

A couple of weeks or so later, as the Bluegrass Band was leaving the band room, we could hear Ms. Boyd going off on another worker in the gym. (where her office is also located) The gist of the tirade was, "What's he doing in there? He's not supposed to be in there!"

That same afternoon, our lead singer was called to Ms. Boyd's office and told that he could no longer play music because he was not IRPP compliant. It is not clear what Ms. Boyd's job is other than 'teacher,' but at that time, *the inmate had every right to be in the band room because being IRPP compliant was not (and never had been) a prerequisite for participating in the music program.*[2]

The music program does not fall under the auspices of the Education Department, and certainly, Ms. Boyd does not have the authority to make DOC policy, but with collaboration and absent any other logical explanation, it appears that is exactly what transpired. Present during the meeting between Ms. Boyd and our band member were six other staff members, including Deputy Warden, Jason Collins - Assistant Warden of Security, Jonathon Frame - Shayne Ryan, Gym Director - Scottie Hypes, Stewart Hall Manager - Programs Manager, Ricky Bess - and John Bess, Stewart Hall Unit Manager. Petitioner is unaware of the extent of collaboration or with whom of the six she collaborated, but Ms. Boyd could not have accomplished this change on her own.

A reasonable question might be, in such an inconsequential meeting as this - Why would it take a Deputy Warden, an Asst. Warden, and the rest of those senior staff members to preside over it?

A reasonable answer might be, another new hatched-up change in the "rules" is being thrown out to see if it will fly. Regardless of how important the staff m embers, or how many attended the 'meeting', not one of them has the au thority to write or rewrite DOC policy. *MOCC's rule of punishing inmates who don't take 'recommended' classes, especially those who have claimed innocence from the onset and still claims innocence after 17 years, is in the process of being challenged in Federal Court as both a violation of the Fifth Amendment protection against self-incrimination, and the Due process Clause of the Fourteenth Amendment.* **CV Action # 2:17cv03894)**

To date, there has never been (a) any DOC or MOCC policy posted inre the Educational program's IRPP rules, including what is required of inmates to become IRPP compliant or when the compliance is satisfied, (b) any DOC Policy ever posted citing MOCC's <u>authority</u> to force inmates to take rehabilitation type classes or (c) any DOC Policy ever posted giving MOCC the <u>authority</u> to punish inmates for not taking classes.

---

[2] Petitioner is not filing this action on behalf of the other inmate. He will have to challenge his own case. Petitioner was caught up in this as collateral damage. Petitioner was also banned because he is not now, never has been, **and never will be** IRPP compliant.

(6)
</mark>

The new 'change' in the rules was not the result of a regular review and update as suggested in MOCC's reply to the grievance. (Page 1, Enclosure "A") It was clearly a biased, vindictive act of retaliation against an inmate. The ultimate proof of that declaration lies in the facts that (1) IRPP compliance was not then, or ever had been a prerequisite for playing in the music program, (2) *no other band has lost one single member as a result of the new IRPP 'rule,'* and **significantly important** (3) The band member who was banned was signed up and sitting in a class when he was told by Ms. Boyd that he wasn't IRPP compliant and wasn't going to be, but Petitioner (who is not now, never has been, *and never will be* IRPP compliant) was told by Mr. Ryan if he would just sign a list of the "band room rules", he could play in the band room. How is it legitimately possible that one inmate can be IRPP compliant just by signing a list of 'band room rules' when the inmate who was kicked out of the music program **was already signed up in the IRPP program and actively taking classes?**

A new list of 'bandroom rules' materialized, and the only <u>new</u> rule on the list that Petitioner was asked to sign, was that inmates had to be IRPP compliant to enter the band room. Not being compliant, Petitioner felt it prudent to not sign, and declined the offer. *Apparently it is accepted behavior to ask an inmate to sign a statement that, such signing would make him guilty of fraudulent misrepresentation.* Petitioner was born at twenty minutes after one in the morning, but it wasn't yesterday morning.

There is only one plausible explanation Petitioner can think of for why MOCC has never posted a DOC policy or MOCC regulations for IRPP requirements. Petitioner has been in prison for seventeen years and the fact that he has never seen any sort of posting (a 'memo' is not a policy directive) that authorizes MOCC to pursue their present policy of forcing "IRPP compliance" leads Petitioner to believe that *no such policy exists now, or ever has existed*. The program started circa 2010 because it was a good way to raise $$$$$. ($525.00 'tuition' from WVU for each signature.) It has since devolved into an agenda where virtually the only way to earn 'privileges' today is to sign up for a class. Good behavior gets the inmate nothing. And now in this latest act of childish petulance, IRPP Mania has encroached into the programs that were instituted to enhance the welfare of the prison. (i.e. music program, sports programs, weight yard, etc...)

This latest perversion of the obfuscated 'rules' was able to take place in large part because there has never been any DOC policy posted that specified IRPP Program responsibilities for either inmate or staff alike. Unfortunately, there are always inmates who believe it is their job to play the system, and regrettably, there will always be staff members who are confused about the boundary line where their authority ends and where the abuse of their authority begins. Posting pertinent rules and regulations would go a long way in controlling both sides of that conundrum.

(7)

**RELIEF SOUGHT --**

(1)  MOCC to post the State or Federal authority it relies on to coerce inmates into taking "recommended" classes - **and the authority to punish those who do not.**

(2)  If such policy does not exist, *MOCC to abandon its policy of forcing inmates to attend classes by punishing those who refuse.*

(3)  If such policy does exist, MOCC to comply with established State and Federal policy and post all prison rules and regulations, especially inre the confusion surrounding the IRPP Program. Keeping inmates in the dark concerning prison policy is counter productive in running a prison. Inmates may be only 'inmates' but they have every right to know what is expected of them, not only to earn good-time, but to be apprised of the imperatives expected of them in order to satisfy parole requirements. *They have the right also to expect prison regulations not to change whenever a staff member has a temper tantrum.*

(4)  Since the loss of music privileges was clearly an unconstitutional exercise of authority targeting an inmate, Petitiioner asks the court to restore bandroom 'privileges' to the Bluegrass Band along with an order to leave the programs alone that were established to enhance the welfare of the prison. Perverting the music program was an illegitimate, vindictive encroachment into that program and if allowed to stand, is simply a harbinger of things to come for the rest of MOCC's leisure time programs.

## THIS IS A PRISON, NOT A CONCENTRATION CAMP!

**COUNSEL:**

A. If someone other than a lawyer is assisting you in preparing this case, state the person's name:

    _____N.A._____

B. Have you made any effort to contact a private lawyer to determine if he or she would represent you in this civil action?

    Yes_____          No___X___

    If no, state your reasons:

    _____CAN'T AFFORD A LAWYER_____

C. Have you previously had a lawyer representing you in a civil action in this court?

    Yes_____          No___X___

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

EXECUTED ON _____1 OCTOBER, 2017_____

_____
SIGNATURE OF PLAINTIFF

(9)