## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

JAMES LUCAS,

       Plaintiff,

v.                                                    Case No.   2:17-cv-04146

JASON COLLINS, Acting Warden,
Mount Olive Correctional Complex,
LOITA BUTCHER, Commissioner, DOC,
and JEFF SANDY, Secretary, D-MAPS,

       Defendants.

### PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge.   Pursuant to a Standing Order (ECF No. 3), this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### PROCEDURAL HISTORY

The plaintiff, James Lucas, is an inmate at Mount Olive Correctional Complex ("MOCC") after being convicted of various sex offenses in the Circuit Court of Marion County, West Virginia on November 20, 2000 (Case No. 99-F-190).[1]   (ECF No. 1 at 5). For seventeen years, the plaintiff played in a bluegrass band at MOCC.   (*Id.*)   In March or April 2017, the lead singer of the plaintiff's band was informed that he could no longer

---

[1] https://apps.wv.gov/OIS/OffenderSearch/DOC/Offender/Details?Id=BMPWzMx%2BskcQp8%2BkSvrv vSCs3QZBRkmV2oLU%2Bd8ETR2tM7xvbFWqSm7Q7KyrYUuTTjkYwAJYZB3iANkmpAHSq9f8DZHKju YTWQ9lS0KW3xzevfWhIfMcJ4HpNPwr8sS%2Frs6KoPmy2Wo2Qy6yZINz2IVA3TDE7jCwRsl5ezac2tw%3D

utilize the band room at MOCC because he was not "IRPP"[2] compliant.    (*Id.* at 6).
Thereafter, the plaintiff was also disallowed entry to the band room for not being IRPP
compliant.    (*Id.*)    According to the plaintiff, he does not know what he has to do in order
to be considered IRPP compliant and "no rules have ever been posted in re IRPP
compliance or any rules apprising inmates of their responsibilities in the 'IRPP program.'"
(*Id.* at 5-6).    The plaintiff is aware, however, that, among other things, he would have to
complete a rehabilitative course that requires him to admit his guilt.    (*Id.*)    The plaintiff
will not take the course because he continues to maintain his innocence.    (*Id.*)
According to the plaintiff, MOCC does not have an official policy that links band privileges
with IRPP compliance, and he was never IRPP compliant during the period he utilized
the band room.    (*Id.* at 7).

The plaintiff further alleges that he was told by an MOCC staff member that he
could use the band room again if he signed a new list of "band room rules" which included
the rule that he be IRPP complaint.    (*Id.* at 7).    The plaintiff refused to sign the rules
because he knew he was not IRPP compliant and believed signing the document would
make him guilty of fraudulent misrepresentation.    (*Id.*)

In August 2017, the plaintiff filed a separate lawsuit arguing that the prison's
rehabilitation classes violate the Fifth Amendment and the Due Process Clause of the
Fourteenth Amendment. *Id.*; *see Lucas v. Ballard*, 2:17-cv-3894.    In October 2017, the
plaintiff filed this Complaint against Jason Collins, Acting Warden, Loita Butcher, who
was then the Commissioner of the West Virginia Division of Corrections ("WVDOC"), and

---

2    "IRPP" stands for "Individual Reentry Program Plan."    *See Longwell v. Ballard*, No. 11-0912, 2012
WL 5232243, *1 (Oct. 19, 2012).

Jeff Sandy, Secretary of the West Virginia Department of Military Affairs and Public Safety ("D-MAPS").   (ECF No. 1 at 1).[3]   Here, the plaintiff alleges that the defendants violated the Due Process Clause of the Fourteenth Amendment by failing to post "all prison rules and regulations," but "especially" those in regard to the IRPP program.   (*Id.* at 5–8).   The plaintiff also states that inmates are entitled to know what is expected of them to earn good time credits and receive parole.   (*Id.* at 8).   While less clear, the plaintiff also appears to allege that MOCC does not have the authority to punish inmates for not taking classes that are not mandatory.   (*Id.*)

The "relief sought" section of the Complaint seeks the following forms of injunctive relief:

(1)    MOCC to post the State or Federal authority it relies on to coerce inmates into taking "recommended" classes – and the authority to punish those who do not.

(2)    If such a policy does not exist, MOCC to abandon its policy of forcing inmates to attend classes by punishing those who refuse.

(3)    If such a policy does exist, MOCC to comply with established state and Federal policy and post all prison rules and regulations, especially in re the confusion surrounding the IRPP program . . . . Inmates may be only 'inmates' but they have every right to know what is expected of them, not only to earn good-time, but to be apprised of the imperatives expected of them in order to satisfy parole requirements. They have the right also to expect prison regulations not to change whenever a staff member has a temper tantrum.

---

3   The allegations in these two cases are very similar.   Here, the plaintiff alleges that the defendants violated the Due Process Clause by failing to post rules regarding IRPP compliance, whereas in the other case he argues that the defendants violated the Due Process Clause by punishing inmates for not being IRPP compliant.   In the instant case, the plaintiff alleges that the defendants do not have the affirmative authority to "coerce" inmates to take classes, whereas in the other matter, he argues that the classes violate his Fifth Amendment right against self-incrimination.   (*Id.*; *Lucas v. Ballard*, 2:17-cv-3894, ECF No. 1).

(4)  Since the loss of music privileges was clearly an unconstitutional exercise of authority targeting an inmate, Petitioner asks the court to restore bandroom "privileges" to the Bluegrass Band along with an order to leave the programs alone that were established to enhance the welfare of the prison.

(*Id.* at 8).

## STANDARD OF REVIEW

Pursuant to the provisions of 28 U.S.C. § 1915A, the court is obliged to screen each case in which a prisoner seeks redress from a governmental entity, and must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.   28 U.S.C. §§ 1915A(a) and (b).   A "frivolous" case has been defined as one which is based on an indisputably meritless legal theory.   *Denton v. Hernandez*, 504 U.S. 25 (1992).   A "frivolous" claim lacks "an arguable basis either in law or in fact."   *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints.   However, the court may not re-write the pleading to develop the plaintiff's legal theories for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented."   *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).   In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."   While the complaint need not assert "detailed factual

4

allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.
>
> * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50. This standard applies equally to the initial screening conducted under 28 U.S.C. § 1915A, where no Motion to Dismiss has been filed.

## ANALYSIS

The plaintiff argues that MOCC does not have the "affirmative authority" to take away privileges from inmates for not completing rehabilitation classes — he is mistaken. "[C]hanges in a prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges — matters which every prisoner can anticipate are contemplated by his original sentence to

prison — are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991).

> The limitation on prisoners' privileges and rights . . . follows from the need to grant necessary authority and capacity to federal and state officials to administer the prisons. "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." To respect these imperatives, courts must exercise restraint in supervising the minutiae of prison life.

*McKune v. Lile*, 536 U.S. 24, 37 (2002) (citations omitted). "[B]y virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted." *Id.* at 40.

Since it is clear that MOCC administrators have the authority to deny privileges to inmates who do not take recommended classes, the only issue is whether the defendants violated the Due Process Clause of the Fourteenth Amendment by not publishing its rules and regulations. The plaintiff alleges that the Fourteenth Amendment requires MOCC administrators to "post all prison rules and regulations." (ECF No. 1 at 8).

The plaintiff's Complaint specifically addresses regulations with respect to good time credits, parole, and the IRPP program. (*Id.* at 5, 8). However, because there are no allegations in the Complaint regarding good time credit or parole regulations, the undersigned will limit the analysis herein to the plaintiff's allegations that MOCC has not published regulations regarding how prisoners can become IRPP compliant and what privileges, such as use of the band room, prisoners may lose if they are not IRPP compliant.

The Fourteenth Amendment bars states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause has a substantive component and a procedural component. It appears that the plaintiff is making a procedural due process claim herein.

"[P]rocedural due process questions [are analyzed] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). "[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it." *Id.* Under certain circumstances, "States may create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). These interests, however, are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

In order to establish a due process violation, the plaintiff must demonstrate that he had a protected liberty interest in becoming IRPP compliant or in his loss of privileges as a result of non-compliance. IRPP non-compliance, and loss of voluntary privileges such as use of the band room, are simply not the type of "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Accordingly, the court **FINDS** that the plaintiff does not have

a protected liberty interest in the creation or publication of regulations regarding IRPP compliance and the availability of prison privileges.

The plaintiff cites *Gillespie v. Kendrick*, 265 S.E.2d 537 (W. Va. 1980), in support of his argument that he has a protected liberty interest.  However, *Gillespie* concerned earning good time credit, which the Supreme Court has recognized that "a valuable liberty interest protected by the due process clause."  *Id.* at 540.  The plaintiff has not alleged that he has been denied good time credit.   Moreover, the programming and privileges he challenges herein are distinguishable from the good time credit issue in *Gillespie*, and do not give rise to a protected liberty interest sufficient to support a procedural due process claim under the Fourteenth Amendment.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which relief can be granted and is subject to dismissal under 28 U.S.C. § 1915A.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** this matter for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A.

The plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge.   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(C), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with

the Clerk of this Court, specific written objections, identifying the portions of this Proposed Findings and Recommendation to which objection is made, and the basis of such objection.    Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.    *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).    Copies of such objections shall be served on Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff.

August 30, 2018

Dwane L. Tinsley
United States Magistrate Judge

9